## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PALM BEACH DIVISION

SUN CAPITAL PARTNERS, INC.                    Case No.  15-81361-CIV-KAM

        Plaintiff,

v.

TWIN CITY FIRE INSURANCE
COMPANY, and AXIS INSURANCE
COMPANY,

        Defendant.

_____/

### AMENDED COMPLAINT

Sun Capital Partners, Inc. ("Sun Capital"), sues Twin City Fire Insurance Company ("Twin City") and Axis Insurance Company ("Axis"), and alleges:

### NATURE OF THE ACTION

1.      This is an action seeking damages for breach of contract arising out of the failure of Twin City and Axis to comply with their defense obligations under the insurance policies described below.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as this is a suit between parties that are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) because the insurance policies at issue were delivered to Sun Capital within this judicial district and a substantial part of the acts or omissions giving rise to this action occurred within this judicial

district.

## THE PARTIES

4.      Sun Capital is incorporated in the State of Florida and has its principal place of business in Boca Raton, Florida.  Sun Capital is listed as the Insured Organization under the insurance policies (described below) that are at issue in this action.

5.       Twin City is incorporated in the State of Indiana and has its principal place of business in Hartford, Connecticut.  Twin City is a foreign corporation authorized by the Florida Department of Financial Services to transact the business of insurance and issue insurance coverage in the State of Florida.

6.      Upon information and belief, Axis is incorporated in the State of Illinois and has its principal place of business in Chicago, Illinois. Upon information and belief, Axis is a foreign corporation authorized by the Florida Department of State to transact the business of insurance and issue insurance coverage in the State of Florida.

## THE POLICIES

7.      The Axis Excess Policy: Axis issued excess Policy No. MNN 711274/01/2007 to Sun Capital as the Policyholder, effective from December 31, 2007 to December 31, 2008 (the "Axis Excess Policy"). A copy of the Axis Excess Policy is attached as Exhibit A.

8.      The Axis Excess Policy has a $10,000,000 limit of liability in the aggregate. (Declarations Item 3. Limits of Liability).

9.      The Twin City Excess Policy:  Twin City issued Universal Excess Policy No. DB 0215592 to Sun Capital as the Named Organization, effective from December 31, 2007 to December 31, 2008 (the "Twin City Excess Policy").  A copy of the Twin City Excess Policy is attached as Exhibit B.

Case No.  15-81361-CIV-KAM

10.     The Twin City Excess Policy has a $10,000,000 limit of liability in the aggregate. (Declarations Item C. Limit of Liability)

11.     Under the Twin City Excess Policy, Twin City agreed to provide "the **Insured(s)** with insurance during the Policy Period which is in excess of the total limits of liability and any retention/deductible under all Underlying Insurance, as set forth in Item D of the Declarations, whether collected or not."  (Section I.)

12.     The HCC Primary Policy:  Houston Casualty Company Policy No. H707-60661, effective from December 31, 2007, to December 31, 2008, is listed as the primary policy under Item D. Schedule of Underlying Insurance of the Twin City Excess Policy (the "HCC Primary Policy").  A copy of the HCC Primary Policy is attached as Exhibit C.

13.     The HCC Primary Policy has a $10,000,000 limit of liability in the aggregate.

14.     The applicable retention under the HCC Primary Policy is $250,000.

15.     Under the Twin City Excess Policy, liability attaches only "after the Primary and Underlying Excess Insurers shall have paid the full amount of their respective liability …." (Section II.A)

16.     The limit of liability under the HCC Primary Policy has been exhausted by the payment of Loss for the benefit of Sun Capital in connection with the Underlying Litigation described below.

17.     The Twin City Excess Policy "follows form" in relevant part to the HCC Primary Policy.  Specifically, the Twin City Excess Policy states:

This endorsement modifies insurance provided under the following:

**UNIVERSAL EXCESS POLICY**

Section III., Primary and Underlying Insurance, paragraph A., is deleted and replaced with the following:

This policy is subject to the same representations, terms, conditions, definitions, exclusions and endorsements (except as regards the premium, the amount and limits of liability, and duty to defend, and except as otherwise provided herein) as are contained in or as may be added to the Primary Policy, together with all the representations, terms, conditions exclusions and limitations contained in or added by endorsement to any Underlying Excess Policy (ies).  In no event, shall this policy grant broader coverage than is provided by the most restrictive Primary or Underlying Excess Policy(cies).

(Endorsement No. 7).

18.     The limit of liability under the Twin City Excess Policy has been exhausted, as Sun has incurred covered Loss in excess of the Twin City policy limits, although the actual exhaustion is currently unliquidated and will be resolved by the Related Pending Litigation, *see infra*, by the payment of Loss for the benefit of Sun Capital in connection with the Underlying Litigation described below.

19.     The Axis Excess Policy states: "If any **Underlying Insurer** fails to make payments under such **Underlying Insurance** for any reason whatsoever, including without limitation the insolvency of such **Underlying Insurer**, then the **Insureds** shall be deemed to have retained any such amounts which are not so paid." (Section V.C)

20.     The Axis Excess Policy "follows form" to the HCC Primary Policy, and states in relevant part:

With respect to each **Insurance Product**, the **Insurer** shall provide the **Insureds** with insurance during the **Policy Period** excess of all applicable **Underlying Insurance**. Except as specifically set forth in the provisions of this Policy, the insurance afforded hereunder shall apply in conformance with the provisions of the applicable **Primary Policy** and, to the extent coverage is further limited or restricted thereby, to any other applicable **Underlying Insurance**. In no event shall this Policy grant broader coverage than would be provided by the most restrictive policy constituting part of the applicable **Underlying Insurance.**

(Section I)

21.     The Axis Excess Policy lists the HCC Primary Policy as the Primary Policy, and the Twin City Excess Policy as Other Underlying Policies; together they are the Underlying

Insurance. (Endorsement No. 1)

22.     Pursuant to the terms of the HCC Primary Policy, Twin City and Axis agreed to "pay on behalf of the **Insured Organization Loss**, which the **Insured Organization** is legally obligated to pay and which arises from any **Claim** first made against the **Insured Organization** during the **Policy Period** for a **Wrongful Act**."  (Section I.C(3))

23.     Under the HCC Primary Policy, **Insured Organization** means, in relevant part:

> (1)     the entity listed in Item A. of the Declarations of this Policy;
>
> . . .

(Endorsement No. 8).

24.     The HCC Primary Policy defines **Loss** as:

> **Loss** means damages, settlement and **Costs, Charges and Expense** incurred by any of the **Insureds**, including punitive, exemplary or multiplied damages; provided, however, that such punitive, exemplary or multiplied damages are insurable pursuant to any applicable law.  (Insurers agree not to contest the application of the law of, or removal of the litigation to, any jurisdiction that may provide for the insurability of punitive, exemplary or multiple damages if such law can be demonstrated as applicable by the Insureds).  Loss shall not include:
>
> (1)     taxes, criminal or civil fines or penalties imposed by law;
>
> (2)     matters deemed uninsurable under the law pursuant to which this Policy shall be construed;
>
> (3)     any amounts paid to or on behalf of the **Insured Persons** as indemnification from a **Portfolio Company** under any applicable agreement or as required or permitted by statute, by-laws or charter of the **Portfolio Company**, or any amounts paid to or on behalf of the **Insured Persons** under any insurance coverage provided by the **Portfolio Company**;
>
> (4)     any amount allocable to uncovered **Loss** under this Policy; or
>
> (5)     the return of any contribution of capital to any **Insured Person.**

(Endorsement 10).

25.     The HCC Primary Policy defines **Costs, Charges and Expenses** as follows:

Case No.  15-81361-CIV-KAM

    **C.**    **Costs, Charges and Expenses** means reasonable and necessary legal fees and expenses (including expert fees) and costs of attachment or similar bonds incurred by the **Insureds** in the investigation of or defense of any **Claim**, but shall not include:

    (1)    directors' fees, salaries, wages, overhead or benefit expenses associated with directors, officers or employees of the **Insured Organization** or the **Portfolio Company**, or

    (2)    any amounts incurred in the defense of any **Claim** for which any other insurer has a duty to defend.

(Endorsement No. 7).  Loss, as defined by the HCC Primary Policy, thus includes defense costs incurred in defense of a Claim.

26.    Under the HCC Primary Policy, **Wrongful Act** means, in part, "with respect to Insuring Agreement Coverage C, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Insured Organization** …." (Endorsement No. 16).

27.    Under the HCC Primary Policy, Claim is defined, in part, as "... any civil, judicial administrative, regulatory or arbitration proceeding (including any appeal therefrom) or formal or informal investigation initiated against any of the Insureds …."   (Endorsement No. 6).

28.    The HCC Primary Policy also contains the following Insured Organization authorization clause:

    **E.**    **Insured Organization Authorization Clause**

    By acceptance of this Policy, the Insureds agree that the entity identified in Item A. of the Declarations will act on their behalf with respect to the giving of all notices to the Insurer, the receiving of notices from the Insurer, and the payment of the premium and the receipt of any return premium.

(Section X.E)

29.     The Axis Excess Policy further states: "If the **Underlying Limits** are partially reduced solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as excess insurance over the remaining **Underlying Limits**." (Section IV.A)

30.     The Axis Excess Policy has a "drop down" provision: "If the **Underlying Limits** are wholly exhausted solely due to actual payment under the **Underlying Insurance**, this Policy shall continue to apply as primary insurance with respect to the applicable **Insurance Product(s)** and the retention or deductible, if any, applicable under the **Primary Policy(ies)** shall apply under this Policy." (Section IV.B)

## THE UNDERLYING LITIGATION AND CLAIM

31.     On May 21, 2008, Plaintiffs Casimir Czyzewski, Melvin L Myers, Jeffrey Oehlers, Arthur E. Perigard and Daniel C. Richards (collectively "Czyzewski"), commenced a class action adversary proceeding in the United States Bankruptcy Court for the District of Delaware against 14 defendants, including Sun Capital. (Adv. Pro. No. 08-50662) (BLS) (the "Underlying Litigation").

32.     On or about May 23, 2008, Czyzewski filed an Amended Complaint in the Underlying Litigation, which became the operative pleading as of the date the Underlying Litigation was dismissed.

33.     In the Amended Complaint, Czyzewski alleged that Sun Capital and other defendants ordered a mass layoff of employees in violation of both the Federal and State Worker Adjustment and Retraining Notification Act ("WARN  Act"). Czyzewski asserted two counts against Sun Capital: (1) Count I for violation of the Worker Adjustment and Retraining Notification Act ("WARN" Act); and (2) Count II for violation of the New Jersey WARN Act.

34.     On May 10, 2013, the court entered an Order granting Sun Capital's Motion for Summary Judgment and dismissed the Underlying Litigation.

35.     On May 24, 2013, Czyzewski filed a notice of appeal of the court's Order granting Sun Capital's Motion for Summary Judgment (Civ. No. 13-1127-SLR) ("Appeal"). On September 29, 2014, the appellate court affirmed the lower court's order and dismissed Czyzewski's appeal.

36.     On October 28, 2014, Czyzewski filed a notice of appeal to the Third Circuit Court of Appeal, which is still pending review.

### THE INSURERS' RESPONSE

37.      Sun Capital timely provided notice of the Underlying Litigation to HCC, Twin City, and Axis.

38.     By letter dated June 25, 2008, Twin City acknowledged receiving notice of the Underlying Litigation.

39.     Upon information and belief, at no time did Twin City deny Sun Capital's Claim or issue a reservation of rights letter pertaining to the Underlying Litigation by which Twin City asserted any limitations on coverage which might be effective in excusing Twin City on exhaustion of the HCC primary policy, from paying all or a portion of the cost incurred in defending the Underlying Litigation.

40.     Sun Capital sent updates to its insurers regarding the status of the Underlying Litigation and submitted invoices requesting reimbursement of defense costs.

41.     Sun Capital incurred substantial attorney's fees and costs constituting Costs, Charges and Expenses under the HCC, Twin and Axis policies in defending against the Underlying Litigation and the Appeal, all of which constitute covered Loss under the HCC Primary Policy.

Case No.  15-81361-CIV-KAM

42.     HCC paid a portion of Sun Capital's defense costs for the Underlying Litigation until it exhausted its policy limits by paying defense costs relating to the Underlying Litigation, and settlements relating to other cases and claims arising under the HCC policy.

43.     While HCC paid a portion of the defense costs incurred in relation to the Underlying Litigation, after exhaustion of its policy limits in late 2012, Twin City then became responsible to pay the remainder: a sum exceeding $2,000,000.00.

44.     Documents reflecting the amount owed by Twin City have been provided by Sun Capital, including defense counsel's billings, but Twin City has failed, without explanation, to pay any amount towards the outstanding defense costs.

45.     Sun Capital provided notice to Axis by letter dated June 10, 2008, through Sun Capital's insurance agent, Marsh USA, Inc. A copy of the letter is attached as Exhibit D.

46.     By letter dated March 25, 2011, Axis disclaimed coverage, contending that Sun Capital did not provide notice of the May 21, 2008 Complaint in the Underlying Litigation within the 60 day reporting period.

47.     On October 29, 2015, Sun Capital invited Axis to attend mediation between Twin City and Sun Capital scheduled for December 3, 2015, which Axis declined, affirming its contention that Axis did not timely receive notice.

## RELATED PENDING LITIGATION
## IN THIS COURT

48.     Sun Capital is currently in litigation with Twin City, in the matter of *Sun Capital Partners, Inc. v. Twin City Fire Insurance Company*, 9:12-cv-81397-KAM ("Mervyn's Litigation"). The Mervyn's Litigation, currently before the Honorable Judge Marra and involves the same policies and insurers at issue here, save Axis.

49.     In that case, Twin City is contesting, *inter alia*, whether HCC, Sun Capital's primary insurer, properly exhausted its policy limits when it paid Sun Capital's defense costs and

a portion of Sun Capital's indemnity obligations for the Mervyn's Litigation and is also contesting its obligation to pay any amount regardless of HCC's positions and payments.

50.     Under information and belief, Twin City contends that if HCC did not fully exhaust its limits in paying defense costs and for the settlement of the Mervyn's Litigation, then Twin City's obligation to pay defense costs owed in the Underlying Litigation are less than what it should otherwise have to pay. Sun Capital disagrees with Twin City's position and contends that even if Twin City was correct, which it is not, it is still obligated to pay the portion of defense costs owed in the Underlying Litigation, which it has never disputed.

## CONDITIONS PRECEDENT

51.     Sun Capital made timely payment of all premiums and otherwise satisfied all conditions precedent for coverage under the Twin City and Axis insurance policies. Alternatively, all conditions precedent to this action have been waived or excused.

52.     Twin City and Axis's actions have compelled Sun Capital to retain the undersigned counsel to represent its interests in this action, and Sun Capital has agreed to pay counsel a reasonable fee for their services.

## COUNT I – BREACH OF CONTRACT AGAINST TWIN CITY

53.     Sun Capital re-alleges paragraphs 1 through 52.

51.     The Twin City Excess Policy is an enforceable contract under the laws of the state of Florida.

54.     The Underlying Litigation and Appeal constitute a "Claim" against Sun Capital during the "Policy Period" for an alleged "Wrongful Act" as those terms are defined in the HCC Primary Policy.

55.     The Twin City Excess Policy obligated Twin City to perform certain duties, including the duty to timely pay Loss.

56.     Twin City failed to perform its duties under the contract, and thus breached the contract, by those acts and omissions alleged above, including without limitation its refusal to pay Sun Capital's defense costs.

57.     As a direct and proximate result of that breach, Sun Capital has suffered and continues to suffer damages.

WHEREFORE, Plaintiff, Sun Capital Partners, Inc., demands judgment against Defendant, Twin City Fire Insurance Company, for the full amount of covered Loss; pre- and post-judgment interest thereon; attorney's fees pursuant to FLA. STAT. § 627.428; costs; and any other relief this Court deems equitable, just, and proper.

## COUNT II – BREACH OF CONTRACT AGAINST AXIS

58.     Sun Capital re-alleges paragraphs 1 through 52.

59.     The Axis Excess Policy is an enforceable contract under the laws of the state of Florida.

60.     The Underlying Litigation and Appeal constitute a "Claim" against Sun Capital during the "Policy Period" for an alleged "Wrongful Act" as those terms are defined in the HCC Primary Policy.

61.     The Axis Excess Policy obligated Axis to perform certain duties, including the duty to timely pay Loss.

62.     Axis failed to perform its duties under the contract, and thus breached the contract, by those acts and omissions alleged above, including without limitation its refusal to pay Sun Capital's defense costs.

63.     As a direct and proximate result of that breach, Sun Capital has suffered and will continue to suffer damages.

242024_2

Case No.  15-81361-CIV-KAM

WHEREFORE, Plaintiff, Sun Capital Partners, Inc., demands judgment against Defendant, Axis Insurance Company, for the full amount of covered Loss; pre- and post-judgment interest thereon; attorney's fees pursuant to FLA. STAT. § 627.428; costs; and any other relief this Court deems equitable, just, and proper.

## JURY DEMAND

Sun Capital Partners, Inc. requests a trial by jury of all issues so triable as of right.

Dated: January 4, 2016.

Respectfully submitted,

*/s/R. Hugh Lumpkin*
**R. Hugh Lumpkin**
Florida Bar No. 308196
hlumpkin@vpl-law.com
**Arya Attari**
Florida Bar No. 58847
aattari@vpl-law.com
VER PLOEG & LUMPKIN, P.A.
100 S.E. 2nd Street – 30th Floor
Miami, FL  33131-2151
Tel: 305-577-3996
Fax: 305-577-3558
*Counsel for Plaintiff*